Monica S. Call (#11361)
    Email: mcall@foley.com
Jordan C. Bledsoe  (#15545)
    Email: jordan.bledsoe@foley.com
FOLEY & LARDNER LLP
95 S. State Street, Suite 2500
Salt Lake City, UT 84111
Telephone: 801.401.8900

Eileen R. Ridley (*pro hac vice application
forthcoming*)
    Email: eridley@foley.com
FOLEY & LARDNER LLP
555 California Street, Suite 1700
San Francisco, CA 94104
Telephone: 415.434.4500

*Attorneys for Vendr, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| VENDR, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>TROPIC TECHNOLOGIES, INC., a Delaware Corporation and GRAHAM SANDERS, an individual,<br><br>    Defendants. | **COMPLAINT AND JURY DEMAND**<br><br>Case No. 2:23-CV-00165<br><br>The Honorable: |

Plaintiff Vendr, Inc. hereby complains, petitions, and alleges as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Vendr, Inc. ("Vendr") is a Delaware Corporation with its principal place

of business in the State of Massachusetts.

2.      Defendant Tropic Technologies, Inc. ("Tropic") is a Delaware corporation with its principal place of business in the state of New York.

3.      Defendant Graham Sanders ("Sanders") is an individual who, on information and belief, resides in Utah.

4.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The parties are diverse and the amount in controversy exceeds $75,000. The Court also has subject matter jurisdiction because Defendants' conduct violates the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*

5.      The Court has supplemental jurisdiction over Vendr's state law claims pursuant to 28 U.S.C. § 1367.

6.      This Court has personal jurisdiction over Defendants pursuant to Utah Code § 78B-3-205 because Defendants have transacted business within the State of Utah and caused injury within the State of Utah. This dispute arises from Defendants' contacts with this District, and Defendants have purposefully availed themselves of the Utah forum such that they could reasonably anticipate being called to defend themselves in courts within the state. Requiring Defendants to litigate this case in this Court does not offend traditional notions of fair play and substantial justice and is permitted by the Due Process Clause of the United States Constitution.

7.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District. Venue is also proper in this Court pursuant to a valid forum selection clause in the Employment Agreement and Employee Confidential Information and Inventions Assignment Agreement (the "PIIA") between Vendr and Sanders. *See* PIIA, Exhibit D.

2

## FACTUAL ALLEGATIONS

**Vendr's and Tropic's Competing Businesses**

8.      Vendr was originally founded in 2018 by Ryan Neu. Aaron White and Ariel Diaz joined as a co-founders in 2022 after Vendr's acquisition of Blissfully. Vendr provides customers with multiple SaaS products and services including, among other things, i] a negotiation-as-a-service that helps customers negotiate contracts with third-party suppliers; ii] the management of software contracts on behalf of Vendr's customers, from contract inception to contract execution; iii] solutions to monitor Vendr's customers' SaaS application usage and spend; and iv] solutions to assist finance, procurement, and information technology departments in the procuring of such SaaS solutions.

9.      Vendr is informed and believes that Tropic was founded in 2019 by David Campbell and Justin Elkin. Tropic also provides its customers with multiple SaaS products and services.

10.      Tropic considers Vendr to be a direct competitor and has made that representation publicly. Indeed, Tropic considers Vendr to be its "primary competitor" in the SaaS products and services space. Tropic acknowledges that Vendr is "more prominent" than Tropic in the SaaS products and services space and describes itself as in the "growth mode." Tropic offers competing products and services, including SaaS management and tracking, procurement services, and contract management, and solutions for procurement, finance, and IT & security.

11.      The identity of Vendr's clients, technologies, processes, customer and supplier insights, talk tracks, and data insights, and growth and product strategy is considered highly

confidential and proprietary. Any materials related thereto are limited in distribution and access within Vendr.

12.     Vendr takes reasonable measures to protect the secrecy of the information it considers confidential and proprietary, such as maintaining sophisticated IT security and infrastructure; utilizing unique user IDs and strong passwords; and requiring all employees to sign confidentiality and non-compete agreements, which notify the employees that the disclosure of confidential and proprietary information is strictly prohibited.

13.     Vendr further includes contractual provisions with certain employees with access to confidential and proprietary information which require those employees to adhere to a one-year non-competition provision (as applicable based upon their home jurisdiction).

**Sanders Joins Tropic After a Targeted Recruiting Campaign by Tropic**

14.     Vendr is informed and believes, and thereon alleges, that Tropic has identified Vendr as its "primary competitor" and has developed a concerted campaign to recruit Vendr's key employees despite Tropic's knowledge that those employees are subject to employment agreements, which include both confidentiality and non-compete obligations.

15.     Tropic's knowingly malicious and willful intent is evident. Indeed, Tropic's Talent Partner, Jonbonne Bacchus, and Talent Acquisition Manager, Gabriella Thalassites, have implemented a campaign to contact Vendr employees without provocation through social media (such as LinkedIn) in an effort to recruit them to Tropic and breach their contractual obligations to Vendr. One such employee was Sanders. Further, despite such knowledge and even after Tropic was put on notice and received Vendr's cease and desists letters, Tropic's Head of Talent, James Parker, continued such concerted efforts on February 2, 2023 by contacting and seeking to

recruit a Vendr employee. Tropic's concerted campaign focused on offering higher pay and less work.

16.     Upon information and belief, Tropic has even told Vendr employees that Tropic would cover any legal costs in the event Vendr initiated any legal action related to a non-compete.

17.     Sanders was employed by Vendr starting on June 27, 2022, as its Sr. Executive Buyer. Sanders resided in and performed his services for Vendr in the state of Utah. Sanders entered into a written employment agreement along with the associated PIIA.

18.     As a Sr. Executive Buyer, Sanders was privy to Vendr confidential and proprietary information, including, without limitation, data insights, customer lists and contacts, supplier lists and contacts, overall business processes and strategies, product plans, and plans for growth.  Sanders was highly compensated for his work at $100,000 a year plus incentive compensation. Sanders also participated in at least 100 individual customer deals across multiple third-party suppliers and industries.

19.     Pursuant to his written employment agreement, Sanders agreed to the following pertinent terms:

> …8.  <u>Proprietary Information Agreement.</u>  As a Company employee, you will be expected to abide by the Company rules and policies.  As a condition of employment, you must sign and comply with the Confidential Information and Inventions Assignment Agreement ("PIIA") which prohibits unauthorized use or disclosure of the Company's proprietary information, among other obligations.

20.     Pursuant to the written PIIA, Sanders agreed to the following pertinent terms:

A.  During the course of my employment, I will have access to and knowledge of the Company's trade secrets and Confidential Information; and

B.  It is of material benefit to restrict the disclosure of Company's trade secrets and Confidential Information with a nondisclosure, non-solicitation, and non-competition agreement, all of which are reasonable in terms of scope, geography and duration. …

1.  **Confidential Information Protections.**

    (1)  **Recognition of Company's Rights; Nondisclosure:** My employment by Company creates a relationship of confidence and trust with respect to Confidential Information (as defined below) and Company has a protectable interest in the Confidential Information.  At all times during and after my employment, I will hold in confidence and will not disclose, use, lecture upon, or publish any Confidential Information, except as required in connection with my work for Company, or as approved by an officer of Company. …Company information or documentation to which I have access during my employment, regardless of whether it contains Confidential Information, is the property of Company and cannot be downloaded or retained for my personal use or for any use that is outside the scope of my duties for Company.

2.  **Confidential Information.** *"Confidential Information"* means any and all confidential knowledge or data of Company, and includes any confidential knowledge or data that Company has received, ore receives in the future, from third parties that Company has agreed to treat as confidential and to use for only certain limited purposes.  By way of illustration but not limitation, Confidential Information includes (a) trade secrets, inventions, ideas, processes, formulas, software in source or object code, data, technology, know-how, designs and techniques, and any other work product of any nature, and all Intellectual Property Rights (defined below) in all of the foregoing (collectively, "*Inventions*"), including all Company Inventions (defined in Section 2.1); (b) information regarding research, development, new products, business and operational plans, budgets, unpublished financial statements and projections, costs, margins, discounts, credit terms, pricing, quoting procedures, future plans and strategies, capital-raising plans, internal services, suppliers and supplier information; (c) information about customers and potential customers of Company, including customer lists, names,

representatives, their needs or desires with respect to the types of products or services offered by the Company, and other non-public information; (d) information about the Company's business partners and their services including names, representatives, proposals, bids, contracts, and the products and services they provide; (e) information regarding personnel, employee lists, compensation and employee skills; and (f) any other non-public information that a competitor of Company could use to Company's competitive disadvantage. However, Company agrees that I am free to use information that I knew before my employment with Company or that is, at the time of use, generally known in the trade or industry through no breach of this Agreement by me. …

6.     **Non-Compete Provision.**

1.     To the extent applicable to me or modified for me as described in **<u>Exhibit D</u>** based on the jurisdiction in which I work, and subject to any future modification by Section 10.3, for the one-year period after the date my employment ends for any reason, including voluntary termination by me or involuntary termination by Company (except as prohibited by law), I will not, directly or indirectly, as an officer, director, employee, consultant, owner, partner, or in any other capacity solicit, perform, or provide, or attempt to perform or provide Conflicting Services[1] (defined above) anywhere in the Restricted Territory (defined below), nor will I assist another person to solicit, perform or provide or attempt to perform or provide Conflicting Services anywhere in the Restricted Territory.

2.     The parties agree that, for purposes of this Agreement, "***Restricted Territory***" means (a) all counties in the state or district in which I primarily perform services for Company; (b) all other states or districts of the United States of America in which Company provided goods or services, had customers, or otherwise conducted business at any time during the two-year period before the date of the termination of my relationship with Company; and (c) any other countries from which Company provided goods or services, had customers, or otherwise conducted business at any

---

[1] "***Conflicting Services***" means any product, service, or process or the research and development thereof, of any person or organization other than the Company that competes with a product, service, or process, including the research and development thereof, of Company with which I worked directly or indirectly during my employment by Company or about which I acquired Confidential Information during my employment by Company.

time during the two-year period before the date of the termination of my relationship with Company.

9.     **Return of Company Property.** When I cease to be employed by Company or upon Company's earlier request, I will deliver to Company any and all materials, together with all copies thereof, containing or disclosing any Company Inventions, or Confidential Information. I will not copy, delete, or alter any information contained upon my Company computer or Company equipment before I return it to the Company. In addition, if I have used any personal computer, server, or e-mail system to receive, store, review, prepare or transmit any Company information, including Confidential information, I will provide Company with (a) computer-useable copy of all such information and then permanently delete such information from those systems, and (b) access to my system as reasonably requested to verify that the necessary copying and/or deletion is completed.

13.    **General Provisions.**

1.     **Governing Law; Consent to Personal Jurisdiction, Notice of Change to Work Location.**  This Agreement will be governed by and construed according to the laws of the state or district in which I primarily work for Company without regard to any conflict of laws principles that would require the application of law of a different jurisdiction.  I expressly consent to the personal jurisdiction and venue of the state and federal courts located in the state or district in which I primarily work for Company and the state or district in which the Company's headquarters is located for any lawsuit filed there against me by Company arising from or related to this Agreement (although I understand Company will not file a lawsuit in the state or district in which the Company's headquarters is located if prohibited by applicable law).  I will not change the state or district where I am primarily working for the Company without providing prior written notice to the Company of such change (other than in the case of any such change requested or required of me by the Company).  …

## Exhibit D

**JURISDICTION-SPECIFIC NON-COMPETITION MODIFICATIONS TO SECTION 6**

**(AS APPLICABLE) …**

4873-3732-5396.5

**For Utah Employees Only**

I acknowledge that I agree to this Section 6 in order to protect Company's legitimate business interest pursuant to Utah Code §§ 34-51-101 to 34-51-301. …

**Sanders' Breach of the PIIA**

21.    On January 4, 2023, Sanders provided Vendr two weeks' notice of his intention to end his employment with Vendr and Sanders' last day of employment at Vendr was January 18, 2023. During his exit interview at Vendr, Sanders did not disclose that he was going to a competitor despite being asked and was further reminded of his continued contractual legal obligations.

22.    On information and belief, Sanders downloaded a significant amount of Vendr's confidential, proprietary, or trade secret information from Vendr's server to his company computer in the weeks before his employment with Vendr ended. On information and belief, Sanders copied that information to a personal computer or device before his employment with Vendr ended.

23.    Contrary to the PIIA's requirement that Sanders not delete any information contained on his company computer, Sanders wiped all data from his computer before returning it to Vendr.

24.    On or about January 25, 2023, Sanders was successfully recruited by Tropic, pursuant to its improper campaign, to leave his employment at Vendr and join Tropic as its Senior Commercial Executive.

9

25.     Sanders was employed by Tropic in a comparable position at Tropic to that which he held at Vendr such that Sanders' knowledge of Vendr's Confidential Information would necessarily be used and disclosed for the benefit of Tropic in breach of the PIIA.

26.     Upon information and belief, the employment offer Sanders received from Tropic provides that Sanders' duties and responsibilities at Tropic would substantially overlap, be coextensive with, or greater than, his strategic duties and responsibilities at Vendr, and includes responsibilities relating to Vendr's product strategy.

27.     Further, Sanders' agreement to be employed by Tropic – an avowed competitor to Vendr – is a direct breach of his non-competition obligations under the PIIA.

28.     Vendr engaged outside legal counsel who notified Tropic that its recruiting campaign was improper and illegal on or about January 13, 2023.

29.     When Vendr was informed of Sanders' termination of his employment with Vendr and his employment with Tropic, Vendr engaged outside legal counsel who notified both Sanders and Tropic that such actions were illegal and in breach of Sanders' contractual obligations to Vendr.

30.     Neither Sanders nor Tropic have agreed to comply with Vendr's demands that the recruiting campaign cease and the Sanders leave his employment with Tropic.

4873-3732-5396.5

## FIRST CLAIM FOR RELIEF
(Breach of Contract Against Sanders)

31.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though set forth fully herein.

32.     Sanders entered into his employment agreement and PIIA freely. The PIIA constitutes a binding contract between Vendr and Sanders. Vendr has performed its obligations under the terms of the PIIA in accordance with the terms set forth therein.

33.     The PIIA imposes restrictions on Sanders' acceptance of employment with a direct competitor of Vendr. By accepting and commencing employment with Tropic (an avowed competitor of Vendr's and a competitor within the meaning of the PIIA), before the end of the PIIA's one-year restriction period, and in a job which, on information and belief, would require the violation of Sanders' ongoing contractual obligations to protect and not use or disclose confidential information about Vendr's business, Sanders is in breach of the PIIA.

34.     Additionally, the PIIA also prohibits Sanders from copying any information contained on his company computer, or deleting the contents of his company computer, before returning it to Vendr.

35.     By accepting and beginning employment with Tropic before the expiration of the non-compete period, Sanders will provide services to a direct competitor and/or engage in activities that would compete with the activities of Vendr, in material breach of the PIIA. By virtue of his conduct, Sanders has breached his obligations under the PIIA and should be required to forfeit all compensation that he received thereunder. Further, Sanders entered into the PIIA with Vendr, which imposes restrictions on Sanders' use and disclosure of confidential information and trade secrets.

11

36.     Because the employment offer Sanders received from Tropic provides that Sanders' duties and responsibilities at Tropic would substantially overlap, be coextensive with, or greater than, his duties and responsibilities at Vendr, it is also inevitable that Sanders will use and/or disclose confidential information and trade secrets to Tropic.

37.     On information and belief, Sanders further materially breached the PIIA by copying Vendr's proprietary, confidential, and trade secret information from his company computer to his personal computer or device in the weeks leading up to his departure from Vendr. In addition, Sanders improperly wiped all data from his company computer before returning it to Vendr.

38.     Unless Sanders is enjoined from being employed by Tropic, Vendr will suffer irreparable and incalculable harm, including the loss of proprietary and confidential information for which it can never be compensated. No adequate remedy at law exists for such a breach.

## SECOND CLAIM FOR RELIEF
(Unfair Competition Under Utah Code § 13-5a-101, *et seq.* Against Tropic)

39.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

40.     Under Utah Code § 13-5a-102(4)(a), a party engages in unfair competition by, among other things, engaging in a business act or practice that is unlawful, unfair, or fraudulent; leads to a material diminution in the value of intellectual property; and constitutes predatory hiring practices.

41.     Tropic has engaged in unfair competition by, among other things, implementing a targeted and predatory campaign to recruit Vendr key employees and participating with Sanders in a scheme to acquire "knowledge transfer" from Sanders that is derived from and unavoidable

incorporates Vendr's confidential information and trade secrets without authorization from Vendr.

42.     Such non-authorization violates the unambiguous terms of the employment agreement and PIIA.

43.     As a result of the aforesaid actions by Tropic, Vendr has suffered and will suffer economic and immediate and irreparable harm to its business, including a material diminution in the value of its intellectual property that Tropic is obtaining from Vendr's former employees.

44.     Unless Tropic is enjoined from implementing its targeted recruiting campaign and employing Sanders and thereby achieving the aforementioned knowledge transfer, Vendr will suffer irreparable and incalculable harm, including the loss of proprietary and confidential information and business methods for which it can never be compensated.  No adequate remedy at law exists for such misconduct.

45.     Money damages alone are inadequate to fully compensate Vendr for the incalculable loss of its competitive advantage, good will, and trade secrets caused by Tropic's wrongful acts.

### THIRD CLAIM FOR RELIEF
(Tortious Interference Against Tropic)

46.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

47.     Vendr has in place agreements with Sanders, specifically the employment agreement and PIIA, which creates restrictions on Sanders' acceptance of employment with a competitor of Vendr and prohibits Sanders from disclosing Vendr's trade secrets or confidential information.

13

48.     As a sophisticated employer, Tropic is aware of the existence of these types of provisions and, indeed, makes use of them itself. On information and belief, Tropic inquires with potential employees about whether they are bound by non-compete provisions before advancing an offer of employment (or knows that it should do so). Accordingly, Tropic was aware of the employment agreement and PIIA prior to offering Sanders a position at Tropic.

49.     Tropic engaged in predatory hiring practices by hiring Sanders with the primary purpose of harming Vendr and obtaining access to Vendr's trade secrets and confidential information from Sanders. Tropic induced Sanders to undertake job duties that substantially overlap with the duties he performed at Vendr and that would require the violation of Sanders' contractual obligations to protect and not use or disclose trade secrets and confidential information about Vendr's business that Sanders acquired in the course of his employment with Vendr. Additionally, on information and belief, Sanders has provided to Tropic, or Sander is using for the benefit of Tropic, Vendr's confidential, proprietary, and trade secret information that Sanders obtained while employed by Vendr.

50.     Tropic's predatory practices of hiring Sanders to obtain access to Vendr's confidential, proprietary, and trade secret information constitutes improper means. Likewise, Tropic's receipt and/or use of that information also constitutes improper means.

51.     As a result of such wrongful interference, and unless Tropic is enjoined from continuing any employment of Sanders, Vendr has suffered and will continue to suffer irreparable and incalculable harm, include the loss of proprietary and confidential information for which it can never be compensated.  No adequate remedy at law exists for such misconduct.

**FOURTH CLAIM FOR RELIEF**

(Violation of the Utah Uniform Trade Secrets Act, 13-24-1, *et seq.* Against Sanders and Tropic)

52.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

53.     As set forth above, Vendr's confidential, proprietary, and trade secret information includes information regarding Vendr's business, operations, services, clients, growth and marketing strategies, SaaS technologies and other proprietary information and/or commercially sensitive information.

54.     Sanders had access to, became familiar with, and gained intimate knowledge of Vendr's confidential, trade secret, and proprietary information.

55.     Vendr derives independent economic value, both actual and potential, from its confidential, proprietary, and trade secret information not being generally known to the public and not being readily ascertainable through proper means to other persons who can obtain economic value from its disclosure or use.

56.     Vendr has taken reasonable efforts to maintain the secrecy of its confidential, proprietary, and trade secret information, including by maintaining sophisticated IT security and infrastructure; utilizing unique user IDs and strong passwords; and requiring certain employees to sign confidentiality and non-compete agreements, which notify the employees that the disclosure of confidential and proprietary information is strictly prohibited.

57.     Sanders is making use of those trade secrets and know-how in the context of engaging in a comparable position at Tropic and seeking to provide Tropic with a competitive advantage. On information and belief, Sanders has, without Vendr's consent, disclosed to Tropic Vendr's confidential, proprietary, and trade secret information to benefit Tropic, Vendr's

15

competitor. On information and belief, Tropic is making use of Vendr's confidential, proprietary, and trade secret information to further its business interests.

58.     Sanders' and Tropic's conduct constitutes misappropriation under the Utah Uniform Trade Secrets Act because Sanders and Tropic knew or should have known under the circumstances that (a) the information misappropriated was confidential, proprietary, and trade secret information; (b) the confidential, proprietary and trade secret information was acquired through improper means, as detailed above; (c) the confidential, proprietary, and trade secret information was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use; and/or (d) the confidential, proprietary, and trade secret information was derived from or through a person who owed a duty to Vendr to maintain the secrecy and limit the use of such information.

59.     As a result of Sanders' unauthorized use of Vendr's confidential and proprietary information, Vendr has been damaged by Sanders' actions in an amount to be proven at trial that is well in excess of $75,000.

60.     Pursuant to Utah Code § 13-24-4(1), Vendr is entitled to recover both the actual loss caused by the misappropriation and the unjust enrichment that is not taken into account in computing actual loss.

61.     On information and belief, unless and until enjoined and restrained by order of this Court, Sanders and Tropic will continue to use and retain Vendr's confidential, proprietary, and trade secret information. Pursuant to Utah Code 13-24-3, Vendr is entitled to an injunction against the misappropriation and continued threatened misappropriation of confidential information.

62.     Because Sanders and Tropic have misappropriated Vendr's confidential, proprietary, and trade secret information willfully and maliciously, Vendr is entitled to an award of its attorneys' fees and an award of exemplary damages, pursuant to Utah Code §§ 13-24-4, 13-24-5.

### FIFTH CLAIM FOR RELIEF
(Violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.* Against Sanders and Tropic)

63.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

64.     Vendr operates its business in interstate commerce across the United States. The trade secrets and confidential information misappropriated by Sanders are related to, and intended for use in, interstate commerce.

65.     As set forth above, Sanders improperly acquired, accessed, viewed, downloaded, and used Vendr's trade secrets and confidential information, thereby misappropriating Vendr's trade secrets pursuant to 18 U.S.C. § 1839(5)(A). The trade secrets Sanders misappropriated include information regarding Vendr's business, operations, services, clients, growth and marketing strategies, SaaS technologies and other proprietary information and/or commercially sensitive information that was secret, valuable in the industry, and had not been disclosed to anyone outside Vendr.

66.     Sanders improperly acquired, accessed, downloaded, used and retained Vendr's trade secrets and proprietary information to compete with Vendr while employed by Tropic, an avowed direct competitor. On information and belief, Sanders has, without Vendr's consent, disclosed to Tropic Vendr's confidential, proprietary, and trade secret information to benefit

17

Tropic, Vendr's competitor. On information and belief, Tropic is making use of Vendr's confidential, proprietary, and trade secret information to further its business interests.

67.     The aforementioned information and materials qualify as "trade secrets" under the DTSA, as defined in 18 U.S.C. § 1839(3). The misappropriated materials and information concerned Vendr's operations, services, clients, SaaS products, sales and marketing strategies, business information, plans, methods and processes.

68.     Furthermore, Vendr has taken reasonable measures to keep such information secret by, among other things, requiring employees to execute proprietary agreements like the PIIA Sanders executed.

69.     The trade secrets misappropriated by Sanders and Tropic include highly confidential information required substantial resources, time, and investment by Vendr to create and/or develop. Vendr derives independent economic value from them not being generally known to, or readily ascertainable by, those how can obtain economic value from the use of this information, such as Vendr's competitors.

70.     Sanders' and Tropic's misappropriation of Vendr's trade secrets will cause Vendr to suffer harm, including but not limited to, the loss of clients, loss of reputation and customer goodwill, the loss of key employees, and the loss of confidentiality of, and investment in, its trade secrets.

71.     Sanders' and Tropic's actions constitute willful and malicious misappropriation of Vendr's trade secrets pursuant to the DTSA, entitled Vendr to an award of reasonable attorneys' fees, an award of exemplary damages up to two times the sum of actual loss, and unjust enrichment damages.

72.     Vendr is entitled to an injunction under 18 U.S.C. § 1836(b)(3)(A) to prevent any retention, use, or threatened use or disclosure by Sanders or Tropic of Vendr's confidential, proprietary, or trade secret information.

### SIXTH CLAIM FOR RELIEF
(Violation of the Computer Abuse and Discovery Act, Utah Code § 36D-3-101, *et seq.* Against Sanders)

73.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

74.     Vendr's company computers and server are "protected computers" under the meaning of Utah Code § 63D-3-102(6)(a) because the computers are used in connection with the operation of Vendr's business and require a technological access barrier in the form of a password for an employee to access the computer.

75.     Sanders' access to Vendr's company computer and server, and Vendr's proprietary, confidential, and trade secret information accessible through those sources, was for the limited purpose of serving Vendr's clients and the operation of Vendr's business.

76.     Vendr gave Sanders access to a company computer and Vendr's server, but Sanders exceeded his authorized access when, on information and belief, he downloaded Vendr's confidential, proprietary, or trade secret information to his company computer from Vendr's server and then transmitted that information to a personal computer or device. Sanders further exceed his authorized access when he wiped from his company computer all data before returning the computer to Vendr.

77.     On information and belief, Sanders obtained Vendr's proprietary, confidential, and trade secret information from the company computer and Vendr's server knowingly and with

the intent to cause harm by intending to use that information during his employment with Tropic. Sanders' use of the company computer and Vendr's server to obtain Vendr's proprietary, confidential, and trade secret information has caused Vendr harm because, on information and belief, Sanders has disclosed that information to Tropic and/or has used and is using that information in the course of his employment with Tropic.

78.     As a result of Sanders' conduct, Vendr is entitled to actual damages, including lost profits, economic damages, and reasonable costs of remediation related to the violation; consequential damages; recovery of its proprietary, confidential, and trade secret information; and its reasonable attorneys' fees and costs.

79.     Vendr is also entitled to an injunction under Utah Code § 63D-3-105(1)(d) to prevent further violations of Utah Code § 63D-3-104.

### SEVENTH CLAIM FOR RELIEF
(Violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C § 1030, *et seq.* Against Sanders)

80.     Vendr incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

81.     Vendr's company computers and server are "protected computers" under the meaning of the CFAA because they are connected to the internet and are used in or affect interstate commerce or communication.

82.     As set forth above, Sanders knowingly and intentionally exceeded his access to his company computer and Vendr's server by downloading Vendr's confidential, proprietary, and trade secret information to his company computer from Vendr's server and then transmitting that information to a personal computer or device.

83.      On information and belief, Sanders intended to defraud Vendr through his unauthorized access to his company computer and Vendr's servers by obtaining and using Vendr's confidential, proprietary, and trade secret information in economic competition with Vendr.

84.      Sanders' use of the company computer and Vendr's server to obtain Vendr's proprietary, confidential, and trade secret information has caused Vendr harm because, on information and belief, Sanders has disclosed that information to Tropic and/or has used and is using that information in the course of his employment with Tropic.

85.      On information and belief, Sanders' unlawful and unauthorized access and other wrongful conduct is ongoing.

86.      On information and belief, Sanders' conduct was for the purposes of private financial gain and securing and unfair business advance, and Sanders' conduct has caused a loss to Vendr during a one-year period in excess of $75,000, and these losses will increase as time goes on.

87.      Vendr has been and continues to be damages by Sanders' actions, including by being forced to expend resources to investigate and/or remediate the unauthorized use, access, downloading, and deletion of information from his company computer and Vendr's server. Vendr seeks compensatory and other equitable relief under 18 U.S.C. § 1030(g).

88.      Vendr has suffered irreparable and incalculable harm and injuries resulting from Sanders' conduct, including harming Vendr's contractual and commercial relationships, and threatening the continued use, disclosure, and misappropriation of Vendr's confidential,

4873-3732-5396.5

proprietary, and trade secret information. The harm will continue unless Sanders is enjoined from further unauthorized use of Vendr's information.

## JURY DEMAND

Vendr demands a jury trial on all issues triable by right of jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Vendr prays for judgment against Defendants as follows:

1. For general compensatory damages and statutory damages in an amount to be determined at trial;

2. For an order preliminarily and permanently enjoining Sanders and Tropic from their wrongful actions;

3. For a return of Vendr's proprietary, confidential, and trade secret information;

4. For an award of attorneys' fees and costs as allowed by applicable law;

5. For costs of suit and pre- and post-judgment interest as allowed by applicable law;

6. For exemplary damages in a sum to be determined by the Court and finders of fact in an amount reasonable and necessary to punish Defendants for their willful, malicious and wrongful conduct and to deter future misconduct; and

7. For such other and further relief as this Court may deem appropriate under the circumstances.

DATED:  March 7, 2023

FOLEY & LARDNER LLP


/s/ Monica S. Call
Eileen R. Ridley
Monica S. Call
Jordan C. Bledsoe
*Attorneys for Vendr, Inc.*